SAMUEL, Judge.
These two suits, consolidated for trial in the district court and for argument here, were brought by Mrs. Jacomina Almerico, widow of Frank J. D’Amico, against the Maryland Casualty Company and the First National Life Insurance Company for accidental death benefits under two policies of insurance issued by the defendants to Mr. D’Amico. Plaintiff has appealed from a judgment in favor of the defendants, dismissing both of her suits.
The policy issued by Maryland is automobile insurance and the indorsement forming a part thereof contains the following insuring agreement:
“Death Indemnity. To pay the principal sum stated in the schedule in the event of the death of the insured which shall result directly and independently of all other causes from bodily injury caused by accident and sustained by the insured while in or upon or while entering into or alighting from, or through being struck by, an automobile, provided the death shall occur (1) within ninety days after the date of the accident, * *
The policy issued by First National is accident insurance and contains the following pertinent provisions:
“Benefit For Death by Accidental Means — If the insured sustains drowning or bodily injury effected solely through violent, external and accidental means, and if such drowning or bodily injury is the direct, independent and proximate cause of the death of The insured within 30 days from the date of such injury, and if such death is not caused or contributed to by disease or infirmity, the Company will on surrender of the policy pay the principal sum specified herein
“Exceptions and Reductions — . * * This policy does not cover death or injury to the insured (1) caused by the intentional act of the insured, * * *; (4) directly or indirectly from bodily or mental infirmities, or diseases in any form or for medical or surgical treatment thereof, or * *
Mr. D’Amico died on April 10, 1961. For several years immediately prior to his death he had a history of hypertensive ar-teriosclerotic heart disease with enlargement of the heart and myocardial ischemia. He was under constant treatment and on diets and medication for high blood pressure and anginal pain. It was necessary for him to carry special medication for the heart at all times. His condition deteriorated during those years and his last attack had occurred in the latter part of 1960 when he was treated for a coronary thrombosis.
*829 During the forenoon of April 10, 1961 Mr. D’Amico was alone in his automobile driving on Elysian Fields Avenue in the City of New Orleans. A motorcycle police officer noticed that the car was traveling slowly and “weaving” as though the driver was intoxicated. After following for several blocks he “pulled” the car over to the side of the street and discovered that Mr. D’Amico was not intoxicated but was ill. Although he had difficulty understanding what the decedent said, the officer was able to understand that Mr. D’Amico complained his head hurt and insisted on going home. He obtained Mr. D’Amico’s phone number, took the keys out of the car and left to call Mrs. D’Amico. He was gone about 10 minutes. When he returned two bystanders were helping Mr. D’Amico to the sidewalk where he first sat down and then lay down. The officer gave the car keys to Mrs. D’Amico when she arrived and called a crash truck which brought Mr. D’Amico to a hospital.
During the time interval in which the police officer was using the telephone to call the decedent’s wife Mr. D’Amico fell heavily to the pavement while attempting to get out of his automobile. He was unconscious when the emergency truck arrived and remained unconscious until he died approximately nine hours later. Death was caused by a massive intracranial hemorrhage.
Plaintiff has endeavored to prove the occurrence of an automobile accident. Mr. D’Amico’s son testified his father took excellent care of his automobile, they had been out together the night preceding his father’s death and at that time the car was in good condition. The next evening, after Mr. D’Amico suffered the fatal attack, the son again saw the car and noticed that the right front fender was damaged. Another plaintiff witness, Mr. Mustacchia, a friend of the decedent for many years, testified that he was driving his truck on Elysian Fields Avenue the morning of April 10 (the day of the fatal attack) when Mr. D’Amico passed in his vehicle to the witness’s left; they waved at each other and the witness did not notice any damage to the right front fender. Another witness, one of the two persons who assisted Mr. D’Amico after his fall from the automobile, noticed that the right front fender was damaged at the time he rendered assistance.
Plaintiff contends that the decedent must have been involved in an automobile accident and that the accident, the fall while attempting to get out of the automobile and the emotional upset caused by those occurrences were the predominant factors in Mr. D’Amico’s death, with resulting liability under the two policies here involved. Plaintiff relies upon the case of Richard v. Southern Farm Bureau Casualty Ins. Co., La.App., 128 So.2d 806.
The trial court concluded that the occurrence of an accident had not been proved and we agree with that conclusion. There is no proof of any automobile accident which contributed to the decedent’s fatal attack. The witness who testified he had not observed any damage to the right front fender saw the D’Amico car only momentarily while it was passing and he was not looking for damage. He observed the car between 11 and 12 a. m. The call for the police emergency unit was received at approximately 11:30 a. m. and the unit arrived at the scene five minutes later. Before that call was made the motorcycle officer saw decedent’s automobile moving slowly and “weaving”, followed it for several blocks, stopped the car, talked to Mr. D’Amico, determined that he was ill, left the scene and telphoned Mrs. D’Amico. He called for the emergency unit after returning to the scene (a 10 minute interval by itself) and after coming to the conclusion that the unit was needed. In addition to any other consideration it is highly improbable that there was enough time for Mr. D’Am-ico to have had an automobile accident between the time the witness Mustacchia observed his passing car and the time that the police officer first saw that car. And the officer noticed nothing about the car, or its occupant, which indicated that an *830 accident had taken place. As the trial judge stated in his reasons for judgment: “There is no proof in the record that any accident occurred other than the fact that the fender of decedent’s automobile was damaged, * * * ” and the record does not show “ * * * when and where this damage took place, who was driving the automobile at the time, or whether it was parked at the time, * *
The record contains the testimony of only two physicians, Dr. Jose L. Garcia-Oller, a neurological surgeon, and Dr. Lewis A. Monte, a specialist in internal medicine. Both previously had treated Mr. D’Amico and both saw him at the hospital on April 10, 1961 after his attack and prior to his death. The two physicians were of the opinion that Mr. D’Amico’s death resulted from a massive, non-traumatic cerebral hemorrhage.
The only evidence of external injury was a bruise of the left ankle which was discovered by Dr. Garcia-Oller and which that physician testified could not have precipitated or contributed to the cerebral hemorrhage. Dr. Garcia-Oller was of the opinion that Mr. D’Amico was suffering the attack when observed by the police officer, the attack caused him to lose control of his automobile and became progressively worse. He felt that the fall from the car was the result and not the cause of the hemorrhage. From his previous treatment of the decedent Dr. Monte testified that Mr. D’Amico’s condition was such that a sudden vascular catastrophe could happen to him at any time. In his opinion the hemorrhage was due to diseased blood vessels and hypertension and death could have occurred in the absence of any other precipitating or contributing cause.
We are satisfied from all the evidence that plaintiff has failed to show any accidental injury to the decedent which was in any way related to the hemorrhage causing his death. The case of Richard v. Southern Farm Bureau Casualty Ins. Co., is not appropos. That case involved an automobile collision which aggravated a latent cardio-vascular condition and contributed to the fatal heart attacks.
The judgments appealed from are affirmed.
Affirmed.